# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

United States of America,

        Plaintiff,

    v.

Sedina Christine Tamakloe Attionu aka Sedina Sharon Christine Acolaste,

        Defendant.

Case No. 2:25-mj-00861-DJA-1

**Order**

Before the Court is the United States of America's (the "Government") request for an order certifying the extradition of Sedina Christine Tamakloe Attionu aka Sedina Sharon Christine Acolaste[1] ("Attionu") to the Republic of Ghana.  The matter was addressed at a hearing on April 2, 2026, as well as through pre-hearing briefs filed by the Government and by Attionu. The Court has considered the certified and authenticated documents submitted by Ghana through diplomatic channels, including, but not limited to: (1) the Request for Extradition of Attionu submitted by the Ministry of Foreign Affairs of the Republic of Ghana; (2) the Affidavit of Yvonne Yaache-Adomako, Assistant State Attorney of the Office of Attorney-General and Ministry of Justice of the Republic of Ghana ("Yaache-Adomako Affidavit"); and (3) the Affidavit of Investigator Kodua Basoa Panyin Twum (the "Twum Affidavit"), attached as an exhibit to the Yaache-Adomako affidavit.  The Court also considered the Declaration of Laura Conn, Attorney Advisor in the Office of the Legal Adviser for the Department of State, Washington D.C. ("Conn Declaration"), together with arguments and pleadings submitted by the parties.  The Court finds as follows.

---

[1] Attionu has appeared through counsel and has not argued that the person sought to be extradited by Ghana authorities arrested in this District with a view toward extradition and brought before this Court are not one and the same person.

## I.    Brief summary of relevant facts.

There is no dispute that Attionu is a citizen of Ghana who is charged, and has been convicted, with twenty five counts of Stealing (Counts 1-4, 6, 8, 10, 12, 14, 15, 17, 19, 21, and 24-35), nine counts of Conspiracy to Steal (Counts 5, 7, 9, 11, 13, 16, 18, 20, and 22), twenty counts of Willfully Causing Financial Loss to the State (Counts 36-42, 44, 46, 47, 51, 53, 55, 57, 59, 61, 63, 64, 66, and 68), eleven counts of Conspiracy to Willfully Cause Financial Loss to the State (Counts 43, 45, 48, 52, 54, 56, 58, 60, 62, 65, and 67), three counts of Causing Loss to Public Property (Counts 69-71), and four counts of Money Laundering (Counts 75-78).[2]  (ECF No. 14-2 at 10-11) (Yaache-Adomako Affidavit).  Relevant to this order, Willfully Causing Financial Loss to the State is criminalized in Ghana under § 179A(3)(a) of the Criminal Offences Act, 1960 (Act 29).  (ECF No. 14-2 at 10) (Yaache-Adomako Affidavit).  Conspiracy to Willfully Cause Financial Loss to the State is criminalized in Ghana under § 23(1) and § 179A(3)(a) of the Criminal Offences Act, 1960 (Act 29).  (*Id.*).  Causing Loss to Public Property is criminalized in Ghana under § 2 of the Public Property Protection Act, 1977 (SMCD 140).  (*Id.*).  And Money Laundering is criminalized in Ghana under § 1(1)(c) of the Anti-Money Laundering Act, 2008 (Act 749).  (*Id.*).  These charges arose out of multiple schemes in which Attionu is alleged to have conspired to steal and fraudulently disbursed more than 25,641,600 Ghanaian Cedis (GH₵), approximately equivalent to US $6,000,000, in her capacity as Chief Executive Officer of the Microfinance and Small Loans Centre ("MASLOC"), an agency of the Republic of Ghana.  (*Id.* at 7).  The Government is seeking extradition of Attionu on seventy-two[3] of the counts.  (ECF No. 19 at 3).

---

[2] Attionu was also convicted of violating regulations regarding the procurement and commitment of public funds to buy motor vehicles (Counts 74, 79, 80), as well as making improper payment of public funds to herself and her co-defendant Daniel Axim (Counts 72 and 73).  But the Government does not seek extradition on these counts because they are not covered by the Extradition Treaty or UNCAC.  (ECF No. 19 at 2 n.3).  The Government is also not pursuing extradition on Count 23 because it is absent from the Charge Sheet.  (*Id.*).  The Conn Declaration further provides that Counts 49 and 50 are not referred to the Court for consideration.  (ECF No. 14-1 at 3).

[3] In its brief, the Government asserts that it is seeking extradition on seventy of the counts.  (ECF No. 19 at 3).  However, the Government's brief refers to the Conn Declaration for this assertion.

As outlined in Ghana's request for extradition, Attionu was the Chief Executive Officer of MASLOC from November 2013 to January 2017. (ECF No. 14-2 at 7). MASLOC is an agency of the Republic of Ghana set up to assist small and medium scale businesses by providing them with low interest loans. (*Id.*). As CEO, Attionu was responsible for the overall supervision and management of MASLOC as well as the day-to-day administration of its affairs and funds. (*Id.* at 173). In 2017, the Ghanaian Economic and Organized Crime Office ("EOCO") investigated fraudulent disbursement of MASLOC funds involving Attionu and the former Operations Manager at MASLOC, Daniel Axim. (*Id.*).

The investigation revealed that Attionu and Axim had conspired to carry out multiple different schemes to embezzle or otherwise criminally misuse MASLOC funds. (*Id.* at 173-80). At trial, the prosecution presented seven witnesses including a subsequent MASLOC CEO, a microfinance company accountant, a traditional farmer and loan recipient, a MASLOC driver, MASLOC's head of finance, an independent auditor, and an investigating agent. (*Id.* at 14-2 at 91). The cumulative evidence showed that Attionu and Axim engaged in multiple schemes, including the following schemes which form the basis of the subject offenses:

### A. The microfinance scheme (Counts 1 and 75).

The first scheme was carried out beginning in or around June 2014 and involved GH₵500,000. (ECF No. 14-1 at 174-75). In June of 2014, MASLOC initially invested a sum of GH₵150,000 in Obaatanpa Micro-Finance Company Limited ("Obaatanpa"). (*Id.*). Thereafter, Attionu offered Obaatanpa a further investment of GH₵500,000. (*Id.*). Obaatanpa accepted and a cheque dated July 24, 2014, in that sum was drawn from MASLOC funds. (*Id.*). However, soon after Obaatanpa received the MASLOC cheque, Attionu told the Board Chairman of Obaatanpa that the investment would attract 24% interest. (*Id.*). As a result, Obaatanpa decided to return the amount to MASLOC and issued a cheque in refund of the loan amount. (*Id.*). When

---

(*Id.*). The Conn Declaration provides that the Government is seeking extradition on *seventy-two* counts. (ECF No. 14-1 at 2-3) (25 counts of Stealing + 9 counts of Conspiracy to Steal + 20 counts of Willfully Causing Financial Loss to the State + 11 counts of Conspiracy to Willfully Cause Financial Loss to the State + 3 counts of Causing Loss to Public Property + 4 counts of Money Laundering = 72 counts).

the cheque was presented, Attionu demanded that the funds be returned in cash. (*Id.*). The Board Chairman complied and delivered the funds in cash to Attionu on August 28, 2014. (*Id.*). Attionu acknowledged receipt of the returned sum by letter, which letter the prosecution tendered in evidence at trial. (*Id.*). However, Attionu never returned the money to MASLOC. (*Id.*). For her role, Attionu was found guilty of Stealing in violation of § 124(1) of Act 29 (Count 1) and Money Laundering in violation of § 1(1)(c) of Act 749 (Count 75). (*Id.* at 22, 46, 114, 149, 175).

### B.    *The sensitization and monitoring scheme (Counts 2-33, 36-48, 51-63, 65-68).*

The second scheme was carried out from approximately April 2016 to December 2016 and involved GH₵1,814,700 of MASLOC funds. (ECF No. 14-2 at 175). Attionu obtained approval from the MASLOC board to spend money on a country-wide sensitization and monitoring program for 85,300 beneficiaries of MASLOC loans. (*Id*). Each of the targeted beneficiaries was to receive GH₵20 to cover transportation and refreshment at the program, for a total of GH₵1,706,000. (*Id*). Evidence presented at trial showed that Attionu withdrew more than the approved amount and never used it for its intended purpose or implemented the program. (*Id*. at 175-176). Instead, EOCO investigation found that only a very small portion of the withdrawn money (GH₵1,300) was spent on refreshments for a limited number of beneficiaries from three regions of Ghana, while the remaining seven regions received no funding at all. (*Id*). Several witnesses, including heads of MASLOC regional offices, testified at trial that no sensitization and monitoring programing ever took place in their regions. (*Id*). For her orchestration of this scheme, Attionu was found guilty of Stealing in violation of § 124(1) of Act 29 (Counts 2-4, 6, 8, 10, 12, 14, 15, 17, 19, 21, and 23-33); Conspiracy to Steal in violation of §§ 23(1) and 124(1) of Act 29 (Counts 5, 7, 9, 11, 13, 16, 18, 20, and 22); Willfully Causing Financial Loss to the State in violation of § 179A(3)(a) of Act 29 (Counts 36-44, 46, 47, 51, 53, 54, 55, 57, 59, 61, 63, 64, 66, 68); and Conspiracy to Willfully Cause Financial Loss to the State in violation of §§ 23(1) and 179A(3)(a) of Act 29 (Counts 45, 48, 52, 56, 58, 60, 62, 65, 67). (ECF No. 14-2 at 58-82, 115-27, 127-36, 175-76).

**C.      *Dishonest appropriation by Attionu's driver for Attionu (Count 15).***

The Court further found that Attionu collected GH₵50,000 in MASLOC funds from her driver, which Attionu failed to account for.  (ECF No. 14-2 at 27, 114).  As a result, Attionu was convicted of Stealing in violation of § 124(1) of Act 29.  (*Id*. at 27, 115).

**D.      *Disaster relief theft (Counts 34, 35, and 77).***

Attionu was also convicted of stealing from MASLOC disaster relief funds in a theft that took place in June 2015 and involved approximately GH₵579,800.  (ECF No. 14-2 at 33, 47, 176-177).  Following a fire in the Kantamanto Market in Accra in 2013, MASLOC was directed to provide relief to victims.  (*Id*. at 176-177).  MASLOC executed this order and obtained designated funds for disaster relief in response.  (*Id*.).  The Forensic Audit Report showed that, on June 13 and June 21, 2015, Attionu withdrew a total of GH₵579,800 from the designated funds.  (*Id*.).  No corresponding record showed distribution of the funds to any person for disaster relief.  (*Id*.).  As a result, Attionu was found guilty of Stealing in violation of § 124(1) of Act 29 (Counts 34, 35) and Money Laundering in violation of § 1(1)(c) of Act 749 (Count 77).  (*Id*. at 126 and 142-149).

**E.      *Mobile telephone procurement scheme (Count 64).***

In November 2016, Attionu carried out an inflated procurement scheme for the purchase of some 200 mobile phones.  (ECF No. 14-2 at 178-179).  Attionu claimed to have purchased the phones for GH₵93,412, though later investigation revealed that the open market price was GH₵24,400.  (*Id*.).  According to trial testimony, Attionu knew that the phone prices that she reported were not reflective of the market price.  (*Id*.).  The resulting loss to the Ghanaian government exceeded approximately GH₵69,000.  (*Id*.).  For this scheme, Attionu was found guilty of Willfully (maliciously or fraudulently) Causing Loss to the State in violation of § 179A(3)(a) of Act 29 (Count 64).  (*Id*. at 42, 133, 136).

**F.      *Loss to public property (Counts 69, 70, and 71).***

Based on the above charges and convictions, Attionu was charged with and found guilty of causing loss to public property in violation of § 2 of the Public Property Protection Act, 1977 (SMCD 140).  (ECF No. 14-2 at 44-45, 136-137).

**G.    Money laundering scheme (Counts 75-78).**

Attionu was convicted of laundering funds unlawfully obtained by the conduct described in the stealing and conspiracy to steal counts of conviction. (ECF No. 14-2 at 46-47, 142-149, 179-180). The core theory of culpability is that she received these funds unlawfully and illegally concealed them. (*Id*. at 179-180). Consequently, she was found guilty of money laundering in violation of § 1(1)(c) of Act 749 (Counts 75-78). (*Id*. at 46-47, 142-149, 179-180). Attionu was present and represented by counsel at her initial arraignment on February 4, 2019, and on all subsequent trial dates through the Prosecution's presentation of all of its witnesses, as well as cross examination of those witnesses by Attionu's counsel, which concluded on July 26, 2021. (*Id.* at 16-17).

**II.    Discussion.**

Extradition is primarily an executive branch responsibility that includes a limited defined role for the judicial officer from whom certification is sought. *See Prasoprat v. Benov*, 421 F.3d 1009, 1012, 1014 (9th Cir. 2005). Under 18 U.S.C. § 3184, the judicial officer is authorized to certify to the Secretary of State that evidence submitted by the country seeking extradition is "sufficient to sustain the charge." If the judicial officer certifies the extradition, the Secretary of State decides whether the alleged fugitive is properly surrendered to the requesting country. *Prasoprat*, 421 F.3d at 1012; *see also* 18 U.S.C. § 3186; *see Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (en banc).

When considering whether to certify the extradition of Attionu to the Secretary of State, the Court must find all of the following are true: (1) the exercise of jurisdiction over Attionu is proper; (2) the Court is authorized to conduct the extradition proceedings; (3) the applicable treaty is in full force and effect; (4) the crimes with which Attionu is charged are covered by the treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. *See* 18 U.S.C. § 3184; *Santos*, 830 F.3d at 991-92. As the Magistrate Judge to whom this is referred, the undersigned has no discretionary decision to make. *Prasoprat*, 421 F.3d at 1012. If the elements of extradition are met, certification of extradition is required. *Id*. Here, Attionu does not contest jurisdiction or this Court's authority to conduct the

extradition proceedings.  (ECF No. 25).  Thus, the Court starts its analysis with whether the treaty at issue is in full force and effect.

### A.    The treaty between the United States and Ghana is valid and in force.

A "long judicial tradition" supports the "general judicial policy of deference to the executive in the area of foreign relations…" *United States v. Fernandez-Pertierra*, 523 F.Supp. 1135, 1141-42 (S.D. Fla. 1981) (*citing Dames & Moore v. Regan*, 453 U.S. 654 (1981) and *Haig v. Agee*, 453 U.S. 280 (1981)).  This deference comes from the "generally accepted view that foreign policy [is] the province and responsibility of the Executive" whose authority in foreign policy derives from Article II of the U.S. Constitution.  *Dep't. of Navy v. Egan*, 484 U.S. 518, 529 (1988) (*quoting Haig*, 453 U.S. at 293-94).  Under Ninth Circuit precedent, judicial deference regarding foreign relations encompasses the State Department's determination that a treaty is in force.  *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996) ("The continuing validity of [a treaty]… presents a political question, and we must defer to the intentions of the State Departments of the two countries."); *In Extradition of Camelo-Grillo*, Case No. CV 16-9026 JVS, 2017 WL 2945715, at *5 (C.D. Cal. July 10, 2017) (finding "[t]he State Department's determination of continuing validity of a treaty is entitled to deference."); *see also Arias Leiva v. Warden*, 928 F.3d 1281, 1289 (11th Cir. 2019) ("[W]e are deferring to the Executive's judgment on a *political issue*—that is, treaty recognition.") (emphasis in original).

Here, State Department Attorney Adviser Laura Conn states, under oath, that "[t]he relevant and applicable treaty provisions in full force and effect between the United States of America and Ghana are found in the Extradition Treaty Between the United States and the United Kingdom, signed December 22, 1931, and continued in force between the United States and the Republic of Ghana, (the 'Extradition Treaty') and the United Nations Convention Against Corruption of October 31, 2003 (the 'UNCAC')."  (ECF No. 14-1 at 2) (the "Conn Declaration").  The State Department's view that the Extradition Treaty and the UNCAC remain in force "is entitled to great weight and importance."  *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir. 1969); *see also Terlinden v. Ames*, 184 U.S. 270, 285 (1902) ("on the question of whether [an extradition] treaty has ever been terminated, governmental action in respect to it must be regarded as of

controlling importance"); *see also Meza v. U.S. Attorney General*, 693 F.3d 1350, 1358 (11th Cir. 2012). Thus, after considering the evidence before this Court, as well as substantial case law, the Court finds the relevant and applicable treaty provisions found in the Extradition Treaty and UNCAC between the U.S. and Ghana are in full force and effect and certification of Attionu's extradition would not be in violation of the provisions found in 18 U.S.C. § 3184.

> **B.**      ***The crimes with which Attionu is charged are extraditable under the Extradition Treaty and UNCAC.***

The question of whether an offense is extraditable involves determining: (1) whether it is listed as an extraditable crime in the relevant treaty; (2) whether the alleged conduct is criminalized in both countries; and (3) whether the offenses in both countries are substantially analogous. *United States v. Knotek*, 925 F.3d 1118, 1128–29 (9th Cir. 2019). Attionu argues that the crimes of Willfully Causing Financial Loss to the State, Conspiracy to Willfully Cause Financial Loss to the State, and Causing Loss to Public Property are not listed in either the Extradition Treaty or the UNCAC. She also argues that the alleged conduct for those crimes and for the crime of Money Laundering is not criminalized in both countries because Ghana requires a lower *mens rea* than the United States laws that the Government asserts are analogous to these crimes. Finally, Attionu argues that the crimes in both countries are not substantially analogous because the Ghanaian crimes of Willfully Causing Financial Loss to the State, Conspiracy to Willfully Cause Financial Loss to the State, and Causing Loss to Public Property are directed to a different "basic evil" than the American crimes that the Government claims are analogous. Each of these arguments fails.

> 1.      Each of the crimes that Attionu challenges are listed in the Extradition Treaty and the UNCAC.

The Government argues that Willfully Causing Financial Loss to the State, Conspiracy to Willfully Cause Financial Loss to the State, Causing Loss to Public Property, and Money Laundering correspond with Article 3(16) (embezzlement) and Article 3(25) (malicious injury to property) of the Extradition Treaty. (ECF No. 19 at 21) (Government's brief); (ECF No. 14-1 at 5) (Extradition Treaty). The Government also argues that Willfully Causing Financial Loss to the

State, Conspiracy to Willfully Cause Financial Loss to the State, and Causing Loss to Public Property are covered by UNCAC Article 17 (embezzlement, misappropriation or other diversion of property by a public official) and that Money Laundering is covered by UNCAC Article 23 (laundering of proceeds of a crime).  (ECF No. 19 at 21) (Government's brief); (ECF No. 14-1 at 38-40) (UNCAC).  Attionu does not challenge that Money Laundering falls under UNCAC Article 23, but asserts that the crimes of Willfully Causing Financial Loss to the State, Conspiracy to Willfully Cause Financial Loss to the State, and Causing Loss to Public Property are not listed in either the Extradition Treaty or the UNCAC.

"[C]ourts must approach challenges to extradition with a view toward finding the offenses within the treaty." *Matter of Extradition of Valdez-Mainero*, 3 F.Supp.2d 1112, 1126 (S.D. Cal. 1998) (quoting *McElvy v. Civiletti*, 523 F.Supp. 42, 48 (S.D. Fla. 1981)).  "[I]f a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." *Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933).  For example, in *Artukovic v. Rison*, the Ninth Circuit found an indictment in Yugoslavia for "war crimes" to fall within treaty language enumerating murder as an extraditable offense. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986).  Here, considering these cases, the Government's argument that the crimes with which Attionu is charged—Willfully Causing Financial Loss to the State, Conspiracy to Willfully Cause Financial Loss to the State, and Causing Loss to Public Property—are covered by the Extradition Treaty and the UNCAC is more persuasive than Attionu's argument that they are not.  The Court therefore finds that these crimes are extraditable.

2.      The conduct for which Attionu is charged is criminalized in both countries.

Not only are the crimes at issue extraditable because they are listed within the Extradition Treaty and the UNCAC, but they are also extraditable because the conduct charged is criminalized both in Ghana and the United States.  Attionu argues that Willfully Causing Financial Loss to the State and Conspiracy to Willfully Cause Financial Loss to the State are not crimes in the United States.  In support of this argument, Attionu refers to 18 U.S.C. § 641, which criminalizes theft and/or receipt of stolen government money or property, which she asserts is the

closest United States federal analogue.  Attionu points out that 18 U.S.C. § 641 requires "knowing, intentional conduct," while § 179(A)(3)(a) requires only a "financial loss" resulting from "reckless and persistent disregard for laid down corporate and statutory rules, or as a result of sheer obstinacy, or as part of a bureaucratic culture of financial accountability."  (ECF No. 25 at 8) (citing *Tsatsu Tsikata v. The Republic* (2003-2004) SGGLR 1068).  Similarly, Attionu argues that Causing Loss to Public Property is not a crime in the United States because, while Ghana criminalizes "the dissipation of or loss or damage to public property" through "carelessness, gross negligence or dishonesty," the United States analogue, 18 U.S.C. § 641 does not.  (*Id.* at 9-10) (citing Ghana's Public Property Protection Act, SMCD 140 § 2).  Finally, Attionu argues that Money Laundering under Ghana law applies to a person who knew or "ought to have known," that the funds were proceeds of unlawful activity, while the United States analogue, 19 U.S.C. § 1956 requires that the Defendant "know [ ] that the property involved…represents the proceeds of some form of unlawful activity…"  (*Id.* at 10) (citing Ghana's Anti-Money Laundering Act, Act 749, § 1(1)(c)).  Attionu argues that United States law requires knowing intent, while Ghana law only requires negligence.  Because the *mens rea* of the crimes in Ghana and the United States differ, Attionu argues that the conduct for which she is charged is not criminalized in both countries.

The Court is not convinced by Attionu's arguments that the differing *mens rea* between Ghana's crimes and their analogues in the United States mean that the crimes are not extraditable.  This is because the Court must analyze whether Attionu's *conduct* would be punishable in the United States as theft and/or receipt of stolen government money or property under 18 U.S.C. § 641 and as money laundering under 18 U.S.C. § 1956.  *See Knotek*, 925 F.3d at 1129 ("[w]e next turn to whether [the defendant's] conduct would be punishable in the United States as an attempted extortion under 18 U.S.C. § 1951.").  "This is a fact-based inquiry into the conduct alleged in the documents filed by the [requesting country] officials, through the U.S. government, in support of the extradition request."  *Id.*

Case law establishes that "each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States.  It is

enough that the conduct involved is criminal in both countries." *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986); *see also Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404-05 (9th Cir. 1988) (the elements of the crime committed in a foreign country need not be identical to the elements of the substantially analogous crime in the U.S. "It is enough that the conduct involved is criminal in both countries.") (citing *Russell*, 789 F.2d at 803) (stating that Hong Kong crimes of false accounting and publishing a false statement are substantially analogous to federal crimes of making a false entry in a bank statement); *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) ("[D]ifferences between statutes aimed at the same category of conduct do not defeat dual criminality."); *Emami v. U.S. Dist. Court*, 834 F.2d 1444, 1450 (9th Cir. 1987) (stating that dual criminality is satisfied if the "substantive conduct each statute punishes is functionally identical").

As explained in *Emami*, as long as the fugitive's alleged conduct would be prosecutable under the laws of the U.S., dual criminality is satisfied even though the two relevant countries had differing definitions of fraud. *Emami*, 834 F.2d at 1449–50; *see also Matter of Extradition of Fordham*, 281 F.Supp.3d 789, 801 (D. Alaska 2017) (rejecting the argument that "differences in *mens rea* requirements ... defeat dual criminality"); *Spatola v. United States*, 741 F.Supp. 362, 372-73 (E.D.N.Y. 1990) *aff'd*, 925 F.2d 615, 618-19 (2nd Cir. 1991) ("without engaging in an unnecessary, comparative law, element-by-element statutory analysis ... the acts for which Spatola was convicted [in Italy], and the actions of the group for which Spatola as co-conspirator was liable, are clearly illegal [in the U.S.]"); *Trifonov v. Fox*, Case No. C14-0366JLR, 2014 WL 3735419, at *14 (W.D. Wash. July 28, 2014) (discussing and rejecting the argument that the laws of the State of Washington were not substantially analogous to Bulgarian law because Washington law required "a greater mens rea than is required" by the Bulgarian statute at issue); *Causbie Gullers v. Bejarano*, Case No. 06CV1659 JM (AJB), 2007 WL 9771356, at *4 (S.D. Cal. Jan. 8, 2007), *aff'd in part and remanded on other grounds*, 293 Fed. App'x. 488 (9th Cir. 2008) (rejecting the fugitive's argument regarding a lack of dual criminality "because a successful fraud prosecution in the United States requires proof of specific intent to deceive, whereas such proof is not required for a criminal fraud conviction under Mexican law.").

In *Manta v. Chertoff*, the Ninth Circuit found considering alleged intent as part of its dual criminality analysis was proper. *Manta v. Chertoff*, 518 F.3d 1134, 1142 (9th Cir. 2008). However, the Court rejected the fugitive's argument that "the government did not prove dual criminality because it failed to establish specific intent to defraud." *Id.* (internal quote marks omitted). The court stated that "[a]n intent to defraud may be inferred from circumstantial evidence[, and] we can easily infer ... [the fugitive's] intent to defraud from the alleged conduct on which Greece based" two charges. *Id.*

The Nevada District Court's decision in *Matter of Extradition of Sridej* stands for the proposition that, even if the United States may require a higher *mens rea* for a crime than a requesting country, dual criminality exists where the defendant's actions would satisfy the higher *mens rea*. *See Matter of Extradition of Sridej*, 649 F.Supp.3d 987, 993-95 (D. Nev. 2023). There, the defendant was charged in Thailand with fraud. *See id.* But in Thailand, fraud does not require an intent to deceive, while Nevada law pertaining to grand larceny, bank fraud, and wire fraud on which the Government relied, does. *See id.* However, the court found that the evidence of the defendant's conduct was enough to show that, had she been charged in Nevada, her conduct would have been prosecutable. *See id.* The court explained that defendant's "intent is easily inferred from the authenticated, circumstantial evidence presented by the Public Prosecutor," such that dual criminality existed and the offenses were extraditable. *See id.*

Here, the Twum Affidavit details numerous acts in which Attionu is alleged to have knowingly and intentionally stolen or received government money or property and in which she is alleged to have known that the money involved was proceeds of unlawful activity. The allegations attached to the Twum Affidavit detail facts demonstrating that Attionu: (1) kept GH₵500,000 of returned MASLOC loan money for herself without causing the money to go back to MASLOC, as evidenced by a letter Attionu wrote confirming her acceptance of the money but there being no corresponding record that MASLOC received it; (2) withdrew GH₵1,816,00— more than the approved GH₵1,706,000—of MASLOC funds approved for a sensitization and monitoring program but then only put GH₵1,300 to its intended purpose; (3) appropriated GH₵246,280 intended for training, sensitization, and financial literacy but never put that money

towards its intended use; (4) appropriated GH₵579,800 out of a disaster relief fund without evidence of using the money for its intended purpose; (5) procured cell phones for MASLOC using MASLOC funds at a far-higher-than-retail price against the advice of her co-defendant and then Head of Finance of MASLOC; and (6) was unable to account for the funds she allegedly took from MASLOC. In its judgment of conviction of Attionu, the Ghanaian High Court also outlined facts demonstrating that Attionu's driver obtained GH₵50,000 from MASLOC funds that Attionu collected, but failed to account for. The conduct enumerated by the Twum Affidavit and the judgment of conviction supports the finding that, had the conduct alleged occurred in the Untied States, it would be prosecutable—sufficient to support criminality under 18 U.S.C. § 641 and § 1956, the federal statutes on which the Government relies.

As was true in *Manta*, Attionu's intent is easily inferred from the authenticated, circumstantial evidence presented by Twum and in the judgment of conviction on which the Court is permitted to rely. *Manta*, 518 F.3d at 1142; 18 U.S.C. § 3190. Moreover, the Court notes, under *Emami, Fordham*, *Spatola*, *Trifonov*, and *Causbie Gullers*, a finding of dual criminality does not require equivalent *mens rea*. This case is also factually analogous to *Sridej*. Attionu makes similar arguments as the defendant in *Sridej*, that the *mens rea* elements of the crimes in the United States are narrower than that in the requesting country. But, just as the court was able to infer intent from the evidence presented in *Sridej*, here, as outlined above, the Court can infer Attionu's intent from the evidence presented. The Court therefore concludes that Attionu's alleged conduct would be punishable in the United States.

    3. <u>The offenses in both Ghana and the United States are substantially analogous.</u>

Finally, Attionu argues that the offenses in Ghana and the United States are not substantially analogous because the offenses in each country are not "directed to the same basic evil." (ECF No. 25 at 11). Attionu asserts that the United States' 18 U.S.C. § 641 targets the "basic evil" of *stealing* government property while Ghana's Criminal Offences Act § 179A(3)(a) "targets a different evil: causing the government financial loss—whether by maladministration, fiscal negligence, procurement inefficiency, or 'sheer obstinacy.'" (*Id.*). Attionu argues that

SMCD 140 (Causing Loss to Public Property) targets the evil of "careless[ly]…damag[ing] public property," which is a "basic evil" that the United States does not recognize.  (*Id.*).

For two offenses to be substantially analogous, the court looks at whether "[t]he essential character of the transaction is the same, and made criminal by both statutes." *Wright v. Henkel*, 190 U.S. 40, 58 (1903).  There is no need for the scope of criminal liability to be coextensive or the same in both the United States and requesting country.  *See Collins v. Loisel*, 259 U.S. 309, 312 (1922) (holding there was dual criminality where petitioner was accused of obtaining jewelry by false pretenses, which qualified as cheating in India and obtaining property under false pretenses in the United States).  It is immaterial whether one country's law is broader than the other, *Clarey*, 138 F.3d at 765–66 (comparing simple homicide in Mexico and felony murder in the U.S.), so long as "the essential character of the acts criminalized is the same." *Oen Yin-Choy*, 858 F.2d at 1404–05 & n.2 (finding dual criminality where petitioner was charged with Hong Kong crimes of false accounting and publishing a false statement because they were analogous to U.S. federal crime of making a false entry in a bank statement) (citation omitted).  The fact that a foreign law may be broader than a United States equivalent, and thus punish conduct that would not be unlawful here, is of no consequence, so long as the particular conduct charged is prohibited in both countries.  *Man-Seok Choe v. Torres*, 525 F.3d 733, 738 (9th Cir. 2008).

Here, the Court does not find Attionu's arguments that the laws at issue are not substantially analogous to be persuasive.  Attionu's arguments are focused on the laws' scope.  But just because Ghana's laws are broader in scope such that they punish conduct that would not be unlawful here does not mean that the laws are not analogous or are not directed to the same "basic evil."  Both United States law (18 U.S.C. § 641) and Ghana law (Criminal Offences Act § 179A(3)(a) and SMCD 140) are directed to the same basic evil of misappropriation of public funds and property.  It is immaterial that Ghana punishes that misappropriation when accomplished through negligence, inefficiency, or obstinacy.  The Court therefore finds that the laws in the United States and Ghana are sufficiently analogous such that the crimes at issue are extraditable.

**C.** **The evidence submitted by Ghana through authenticated documents supports a finding of probable cause.**

To certify that Attionu is extraditable, the Court must determine there is probable cause to believe she committed the crimes with which she is charged. *Matter of Extradition of Ameen*, Case No. 2:18-mj-152-EFB, 2021 WL 1564520, at *9 (E.D. Cal. Apr. 21, 2021) (citing *Santos*, 830 F.3d at 991). Evidence is sufficient and probable cause is established if, considered in the context of a preliminary hearing, "whether a case is made out which will justify the holding of the accused ... to ultimately answer" at trial. *Benson v. McMahon*, 127 U.S. 457, 468 (1888); *see also Collins*, 259 U.S. at 316 ("The function of the committing magistrate [judge] is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.").

Probable cause is generally defined as "sufficient evidence to convince a person 'of prudence and caution' that a crime was committed and that the accused committed it." *Ameen*, 2021 WL 1564520, at *9 (citing *Carroll v. United States*, 267 U.S. 132, 160-61 (1925) and *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). Further, a determination of probable cause is properly based solely on a foreign prosecutor's statements, including hearsay and other evidence. *See Manta*, 518 F.3d at 1139-40, 1147; *see also Emami*, 834 F.2d at 1450–51 (hearsay statements summarized in the foreign prosecutor's affidavit in support of extradition was properly authenticated and competent evidence under United States extradition law); *Then*, 92 F.3d at 855 (upholding a Magistrate Judge's finding of probable cause to certify extradition on the strength of two affidavits, one supporting an inference that the fugitive knowingly participated in a bill of exchange fraud, and the second from an inspector describing an admission of an agreement to share proceeds of the fraud and an explanation of the accused's role in the fraud from an individual connected to the crimes for which the extradition was sought).

Where "there has been a judgment of conviction entered by a foreign court, there is no need for an independent determination of probable cause; the relator's guilt is an adjudicated fact which *a fortiori* establishes probable cause." *Spatola v. U.S.*, 925 F.2d 615, 618 (2d Cir. 1991), *cert. denied*, 522 U.S. 1089 (1998) (cleaned up, internal quotations omitted). "[A] foreign

conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition." *Sidali v. I.N.S.*, 107 F.3d 191, 196 (3d Cir. 1997); *see Haxhiaj v. Hackman*, 528 F.3d 282, 291 n.2 (4th Cir. 2008) ("[i]t seems debatable that the international comity justification for the general rule that foreign convictions constitute probable cause under § 3184 would not include *in abstentia* foreign convictions"); *see U.S. v. Vigil*, No. 2:12-mj-0226-GGH, 2013 WL 314755, at *3 (E.D. Cal. Jan. 25, 2013) ("conviction is dispositive of the probable cause issue"); *see In re Extradition of Hughes*, No. EDCV 12-1831-JGB-MLG, 2013 WL 1124294, at *6 (E.D. Cal. Mar. 18, 2013).

Here, Attionu does not point to any provision or factual allegation in the affidavit with which she takes issue. Nor does Attionu challenge the authenticity of the affidavits submitted in support of probable cause, which are admissible and on which the Court may rely. The information in the Twum Affidavit is detailed and specific to dates, actions, and results in which Attionu participated. (ECF No. 14-2 at 172-81). The allegations against Attionu are further supported by the Yaache-Adomako Affidavit. (ECF No. 14-2 at 5-20). Moreover, Attionu has been convicted of the crimes for which the Government seeks extradition. (ECF No. 14-2 at 57-155). Attionu does not offer arguments against the case law supporting the conclusion that a conviction is sufficient to support a finding of probable cause. Nor does she argue that the fact that her conviction was *in abstentia* impacts the weight of the conviction on the Court's probable cause analysis. Together these affidavits and the judgment of conviction are sufficient evidence to convince a person of prudence and caution that crimes were committed and Attionu committed these crimes. Accordingly, the information presented to the Court is competent evidence to establish probable cause that Attionu committed the crimes with which she is charged and has been convicted.

### III. Certification and committal for extradition.

Having held an extradition hearing on April 2, 2026, and after considering the evidence, in particular, the authenticated documents submitted by the Republic of Ghana and the pleadings and arguments of counsel, the Court finds and certifies to the Secretary of State as follows:

1. The Court has jurisdiction over, and the undersigned is authorized to conduct, extradition proceedings pursuant to Title 18 U.S.C. § 3184 and Local Rule IB 1-1(b);

2. This Court has personal jurisdiction over Sedina Christine Tamakloe Attionu aka Sedina Sharon Christine Acolaste, found and arrested on January 7, 2026, in the District of Nevada pursuant to a complaint filed by the United States in response to the request of Ghana for the arrest and extradition of the fugitive;

3. The Extradition Treaty between the United States and Ghana was in full force and effect at all times relevant to this action;

4. Attionu sought by Ghana authorities arrested in this District with a view toward extradition and brought before this Court are one and the same person;

5. The fugitive is accused in Ghana of 25 counts of Stealing in violation of § 124(1) of the Criminal Offences Act, 1960 (Act 29); 9 counts of Conspiracy to Steal in violation of §§ 23(1) and 124(1) of the Criminal Offences Act, 1960 (Act 29); 20 counts of Willfully Causing Financial Loss to the State in violation of § 179A(3)(a) of the Criminal Offences Act, 1960 (Act 29); 11 counts of Conspiracy to Willfully Cause Financial Loss to the State in violation of §§ 23(1) and 179A(3)(a) of the Criminal Offences Act, 1960 (Act 29); 3 counts of Causing Loss to Public Property in violation of § 2 of the Public Property Protection Act, 1977 (SMCD 140); and 4 counts of Money Laundering in violation of § 1(1)(c) of the Anti-Money Laundering Act, 2008 (Act 749). Ghana has jurisdiction over this criminal conduct;

6. The Extradition Treaty pursuant to Article 3, and the UNCAC pursuant to Articles 17 and 23, encompass the offenses with which Attionu was accused and for which extradition is sought;

7. Ghana submitted documents that were properly certified in accordance with 18 U.S.C. § 3190. Those documents include the pertinent text of the offenses for which extradition is sought;

8. Probable cause exists to believe that Attionu committed the offenses for which extradition is sought; and,

9. The evidence before this Court is sufficient to justify the fugitive's arrest and committal for trial had the alleged offenses occurred in the United States.

THEREFORE, pursuant to 18 U.S.C. § 3184, the above findings, the Court certifies the extradition of Sedina Christine Tamakloe Attionu aka Sedina Sharon Christine Acolaste to Ghana on the 25 counts of Stealing in violation of § 124(1) of the Criminal Offences Act, 1960 (Act 29); 9 counts of Conspiracy to Steal in violation of §§ 23(1) and 124(1) of the Criminal Offences Act, 1960 (Act 29); 20 counts of Willfully Causing Financial Loss to the State in violation of § 179A(3)(a) of the Criminal Offences Act, 1960 (Act 29); 11 counts of Conspiracy to Willfully Cause Financial Loss to the State in violation of §§ 23(1) and 179A(3)(a) of the Criminal Offences Act, 1960 (Act 29); 3 counts of Causing Loss to Public Property in violation of § 2 of the Public Property Protection Act, 1977 (SMCD 140); and 4 counts of Money Laundering in violation of § 1(1)(c) of the Anti-Money Laundering Act, 2008 (Act 749) and commits Attionu to the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

DATED: April 9, 2026,

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE